**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**CONNIE STEVENS o.b.o.
T.M.H.,**

                  **Plaintiff,**

        **v.**                              **5:05-CV-1268
                                          (GLS/RFT)**

**COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,**

                  **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Legal Services of Central New York<br>472 South Salina Street, Suite 300<br>Syracuse, NY 13202 | CHRISTOPHER CADIN, ESQ. |
| Legal Aid Society of Mid-New York, Inc.<br>255 Genesee Street, Second Floor<br>Utica, NY 13501 | PAUL J. LUPIA, ESQ. |
| **FOR THE DEFENDANT:** | |
| Hon. Andrew T. Baxter<br>United States Attorney<br>P.O. Box 7198<br>100 S. Clinton Street<br>Syracuse, NY 13261-7198 | WILLIAM H. PEASE<br>Assistant U.S. Attorney |

**Gary L. Sharpe**
**U.S. District Judge**

**DECISION AND ORDER**

## I. Introduction

Plaintiff Connie Stevens, on behalf of her son, T.M.H., alleges that T.M.H. is disabled due to attention disorder, behavior problems, and bipolar disorder, and challenges the denial of benefits by the Commissioner of Social Security. Having reviewed the administrative record, the court affirms the Commissioner's decision.

## II. Procedural History

Plaintiff initially filed an application for supplemental security income ("SSI") on November 12, 2003, alleging disability due to attention disorder, behavior problems, and bipolar disorder. (Tr. at 37-39). This application was denied initially. (Tr. at 25). Plaintiff requested an Administrative Law Judge ("ALJ") hearing, which was held on December 15, 2004. (Tr. at 29-33). The ALJ issued an unfavorable decision on March 24, 2005. (Tr. at 13-23). This decision became the final decision of the Commissioner when the Appeals Council denied review on August 26, 2005. (Tr. at 4-8).

On October 5, 2005, Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking review of the Commissioner's final determination. The Commissioner then filed an answer and a certified administrative

3

transcript, Stevens filed a brief, and the Commissioner responded.

## III. Contentions

Plaintiff contends that the Commissioner's decision is not supported by substantial evidence. She claims that (1) the ALJ erred in deciding that T.M.H.'s impairments did not functionally equal a listed impairment; (2) the ALJ erred in finding that T.M.H.'s impairments did not meet the criteria of Listings 112.04, 112.08, and 112.11; and (3) the ALJ failed to follow the treating physician rule. The Commissioner counters that substantial evidence supports the ALJ's decision.

## IV. Facts

The evidence in this case is undisputed and the court adopts the parties' factual recitations. *Pl.'s Br.* at 2-15; *Def.'s Br.* at 2-10.

## V. Discussion

### A. Standard and Scope of Review

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp.

4

324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g). Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson*, 817 F.2d at 986.

### B.  Standard for Childhood Disability

An individual under the age of eighteen is disabled, and thus eligible for SSI benefits, if he or she

> has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to

5

>result in death or which has lasted or can be
>expected to last for a continuous period of not less
>than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i). That definitional provision goes on to exclude from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity. . . ." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; *Kittles v. Barnhart,* 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, 02Civ.3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003) (Gorenstein, M.J.), *adopted*, No. 02 Civ. 3127, Dkt. No. 18 (S.D.N.Y. July 25, 2003) (Preska, D.J.). The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. 20 C.F.R. § 416.924(b); *Kittles,* 245 F. Supp. 2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the prescribed test next requires examination of whether the

6

child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation.  20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7.  If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings").  *Id.*  Equivalence to a listing can be either medical or functional.  20 C.F.R. § 416.924(d); *Kittles,* 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7.  If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled.  20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

  Analysis of functionality is informed by consideration of how a claimant functions in six main areas denominated as "domains."  20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8.  The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do."  20 C.F.R. § 416.926a(b)(1).  Those prescribed

7

domains include

>   (i)   [a]cquiring and using information;
>
>   (ii)  [a]ttending and completing tasks;
>
>   (iii) [i]nteracting and relating with others;
>
>   (iv)  [m]oving about and manipulating objects;
>
>   (v)   [c]aring for [oneself]; and
>
>   (vi)  [h]ealth and physical well-being.

20 C.F.R. § 416.926a(b)(1). Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes *very* seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I) (emphasis added).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or

8

functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

### C. Analysis

#### 1. *Functional Equivalency*

Plaintiff argues that the ALJ erred in finding that T.M.H.'s impairments were not functionally equivalent to a listed impairment. *Pl.'s Br.* at 20-23. Specifically, Plaintiff argues that T.M.H. suffers from an extreme or at least marked limitation in the domain of interacting and relating with others, and a marked limitation in caring for himself.

In his decision, the ALJ found that T.M.H. suffered from a marked limitation in interacting and relating with others, but found that T.M.H. suffered from no marked or extreme limitations in any of the remaining domains. (Tr. at 20-22).

Substantial evidence supports the ALJ's decision that T.M.H. suffered from a marked, but not extreme, limitation in interacting and relating with others. While the evidence does indicate that T.M.H. had difficulty in this

9

social domain, it does not mandate a finding of extreme limitation. As the ALJ noted, while T.M.H. did not have many friends, he did sustain one childhood friendship. (Tr. at 301). It was noted in a June 2004 Individual Education Plan that T.M.H. responded well to positive adult interactions and praise, got along with peers, and was able to follow classroom and school rules. (Tr. at 84). On January 5, 2004 psychologist Kristen Barry, Ph.D. opined that despite having some difficulty, T.M.H. had fair relationships with peers and family, and was able to follow age-appropriate instructions. (Tr. at 134). Thus, although there is evidence in the record which indicates that T.M.H. had limitations in interacting and relating with others, substantial evidence supports the ALJ's decision that this limitation was marked, but not extreme.

     Substantial evidence also supports the ALJ's determination that T.M.H. did not have a marked or extreme limitation in caring for himself. Evidence indicates that T.M.H. was able to feed, dress, and bathe himself, and that he demonstrated appropriate hygiene for his age group. (Tr. at 134). T.M.H.'s daily activities included listening to music, playing video games, and drawing cartoons. *Id.* Dr. Prowda, a state agency examining psychiatrist, found that T.M.H. had no limitations in caring for himself. (Tr.

at 139). Although T.M.H. exhibited depression and some injurious behaviors toward others, the record does not demonstrate that he has engaged in any self-injurious behavior. As such, the court finds that substantial evidence supports the ALJ's determination that T.M.H. did not suffer from a marked or extreme limitation in caring for himself. For the foregoing reasons, T.M.H.'s impairments did not functionally equal a listed impairment.

### 2. *Listings 112.04, 112.08, and 112.11*

Plaintiff also argues that T.M.H.'s impairments met or equaled the criteria of Listings 112.04 (Mood Disorders), 112.08 (Personality Disorders), and 112.11 (Attention Deficit Hyperactivity Disorder [ADHD]). *Pl.'s Br.* at 23. Each of these impairments require, at Part B, that the claimant exhibit at least two of the following appropriate age-group criteria:

> a. Marked impairment in age-appropriate cognitive/ communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or
>
> b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including

11

consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or

d. Marked difficulties in maintaining concentration, persistence, or pace.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.02(B)(2).

Plaintiff argues that T.M.H. suffers from marked limitations in age-appropriate social functioning and personal functioning, subparagraphs (b) and (c). Because the ALJ found that T.M.H. suffered from a marked impairment in interacting and relating with others, a criteria that is very similar to "social functioning" in this context, the court will accept that T.M.H. suffered from a marked impairment in social functioning under subparagraph (b).

Personal functioning is defined as follows:

Personal functioning in adolescents pertains to self-care. It is measured in the same terms as for younger children, the focus, however, being on the adolescent's ability to take care of his or her own personal needs, health, and

12

> safety without assistance. Impaired ability in this area is manifested by failure to take care of these needs or by self-injurious actions.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.00(C)(4)(a).  As noted above, the record demonstrates that T.M.H. had appropriate hygiene for his age and was able to dress, feed, and bathe himself.  (Tr. at 83, 88, 134).  Additionally, while T.M.H. suffered from depression, had no fear of injury and occasionally even expressed some suicidal ideation, the evidence fails to show that T.M.H. ever purposely injured himself.  (*See* Tr. at 169, 176, 177).  Thus, the court finds that the ALJ's decision that T.M.H.'s impairments did not meet or equal a listing was supported by substantial evidence.

### 3.    *Treating Physician Rule*

Plaintiff argues that the ALJ failed to properly apply the treating physician rule with regard to the opinion given by Dr. Mehrhof, T.M.H.'s treating psychiatrist.  *Pl.'s Br.* at 23-24.  Generally, the opinion of a treating physician is given controlling weight if it is based upon well-supported, medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Schaal v. Apfel*, 134 F.3d 496 (2d Cir.

13

1998). As already noted, an ALJ may not arbitrarily substitute his own judgment for a competent medical opinion. *Rosa*, 168 F.3d at 79. Thus, if the treating physician's opinion is not given controlling weight, the ALJ must assess several factors to determine how much weight to afford the opinion: the length of the treatment relationship, the frequency of examination by the treating physician for the condition(s) in question, the medical evidence supporting the opinion, the consistency of the opinion with the record as a whole, the qualifications of the treating physician, and other factors tending to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

Moreover, the "ultimate finding of whether a claimant is disabled and cannot work [is] 'reserved to the Commissioner.'" *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted); *see* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions." *Snell*, 177 F.3d at 133. Thus, a treating physician's disability assessment is not determinative. *Id.* Where the evidence of record includes medical source opinions that are inconsistent with other evidence or are internally inconsistent, the ALJ must weigh all of the evidence and make a disability

14

determination based on the totality of that evidence.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  An ALJ is required to recontact a treating physician in order to clarify the physician's opinion, when the opinion "contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1).

Dr. Mehrhof submitted an opinion, dated January 25, 2005, which found that T.M.H. had marked limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for himself.  (Tr. at 242-43).  The ALJ considered Dr. Mehrhof's opinion, and deemed it inconsistent with the record as a whole, including treatment notes, school records, and evidence of T.M.H.'s activities of daily living.  (Tr. at 20).

The court concludes that the ALJ's decision in this regard is supported by substantial evidence of record.  Dr. Mehrhof's treatment notes are not extremely detailed, and do not describe the marked limitations found in his opinion.  (*See* Tr. at 244-69).  Dr. Mehrhof assessed T.M.H. with a Global Functioning Score of 60, which indicates the mildest

15

level of moderate limitation in social, occupational, or school functioning. (Tr. at 239, 269).

Moreover, while the evidence does support a marked limitation in interacting and relating with others as the ALJ found, it does not support marked limitations in the remaining domains.  As the court has already found, T.M.H. did not suffer from marked limitations in caring for himself. With regard to the domain of acquiring and using information, the ALJ noted that T.M.H. had low average to above average intelligence test scores, and was described as a "great reader" and as having academic potential.  (Tr. at 91, 97, 127, 133-34).  An Individual Education Plan, concurred with by the Committee on Special Education, stated that T.M.H. was capable of working at or close to grade level.  (Tr. at 83, 94).  State agency psychologist Dr. Karen Prowda reported that T.M.H. was able to use many strategies to comprehend reading material and that he was capable of working at grade level with medication.  (Tr. at 138).  At the hearing, Plaintiff testified that T.M.H.'s grades were the best they had ever been.  (Tr. at 296, 299).

In the domain of attending to and completing tasks, while T.M.H. was noted to have attention problems due to his diagnosed ADHD, these were

16

under control with medication.  (Tr. at 244).  He was doing well in his new school and was able to complete assignments in his structured environment.  (Tr. at 83, 91, 97, 290, 292).  Dr. Prowda noted, upon examination, that T.M.H. was cooperative, relaxed and comfortable during testing, that he was able to comprehend and recall instructions and worked in a deliberate and orderly fashion, and that his attention and concentration were age-appropriate.  (Tr. at 138).

Based on the foregoing, the court concludes that substantial evidence supported the ALJ's decision to accord less than controlling weight to Dr. Mehrhof's January 25, 2005 opinion.

## VI.  Conclusion

After careful review of the entire record, and for the reasons stated, the Commissioner's denial of benefits was based on substantial evidence and not erroneous as a matter of law.  Accordingly, the ALJ's decision is affirmed.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on

17

the parties.

Albany, New York
Dated: November 21, 2008

                                                  Gary L. Sharpe
                                                  U.S. District Judge